<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:        Chapter 7

In re:                     :

:        Case No. 13-35317 (CGM)

      Samye Issa,             :

:

                  Debtor.    :

:
------------------------------------------------------------X

**MEMORANDUM DECISION GRANTING OBJECTION TO HOMESTEAD
EXEMPTION AND DENYING MOTION TO AVOID JUDICIAL LIEN**

**A P P E A R A N C E S :**
Genova & Malin
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Attorneys for the Debtor*
      By:    Andrea B. Malin
              Michelle Trier

Brian D. Perskin
*Pro Se*

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Debtor's former attorney and the holder of a judicial lien against real property that Debtor

claims as her residence opposed Debtor's motion to avoid his judicial lien and objected to

Debtor's use of the homestead exemption.  Debtor is not residing in the property upon which she

claimed a homestead exemption and evidence at trial showed that Debtor did not intend to reside

at that property on the petition date.  As such, the Court grants the objection to the homestead

exemption and denies the motion to avoid the judicial lien.

## I. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## II.  Background

Debtor filed for chapter 7 relief on February 15, 2013.  Vol Pet., ECF No. 1.  On her petition, Debtor listed her address as 5 Club Way, Poughkeepsie, New York (the "Property").  *See id.* at 1.  She also claimed a homestead exemption in the Property of $150,000.  *See id.* at 10 (Schedule C).  On May 15, 2013, Debtor filed a motion pursuant to 11 U.S.C. § 522(f) seeking to strip off a judicial lien held by Brian D. Perskin ("Perskin") on the basis that it impairs her homestead exemption.  Mot., ECF No. 12.  In response to the motion, Perskin filed opposition arguing that the Debtor is not entitled to claim a homestead exemption in the Property.  Opp'n, ECF No. 14.  Perskin was the Debtor's previous divorce lawyer, and obtained a money judgment for unpaid legal fees. *Id.*  Perskin obtained a judicial lien against the Property.  *Id.*

On June 7, 2013, Perskin filed an objection to the Debtor's homestead exemption.  Obj., ECF No. 17.  The objection states that the Debtor is not entitled to a homestead exemption in the Property as "Debtor has not lived in this home for in excess of seven (7) years and has made no efforts to repair the same to make it livable." *See* Obj. 4. Perskin argues that "[a]s the Debtor does not reside there and has no plan to do so, she is not entitled to the homestead exemption." *Id.*

Debtor's counsel filed a response to the objection, which alleges that the Debtor's "physical absence from her residence does not alone defeat the homestead exemption claim."

Resp. 4, ECF No. 22.  Debtor asserts that her absence from the property was involuntary.  *Id.* at

6.  Debtor argues that she "was forced to leave the property in 2006 due to mold issues, broken

elements, a leaky roof, and non-functioning heat." *Id.*  She has not returned due to a lengthy

divorce process and due to the inhabitable nature of the property. *Id.* She argues that she always

intended to move back in "once repairs were made." *Id.* at 2.

The Court held hearings to consider the lien avoidance motion and objection to

homestead exemption on June 27, 2013, August 20, 2013, and October 1, 2013.  At these

hearings, the Court made clear that it intended to hold a trial to determine Debtor's intent to

reside at the Property and ordered the parties to submit a proposed Joint Pre-Trial order on that

issue.  The Joint Pre-Trial Order was entered by the Court on August 23, 2013.  *See* J. Pre-Trial

Order, ECF No. 38.  On October 22, 2013, the Court held the trial.

### III.  Discussion

*A. Homestead Exemption*

Upon commencement of a bankruptcy case, all the debtor's legal or equitable interests in

property become part of the bankruptcy estate. 11 U.S.C. § 541(a)(1).  Although the bankruptcy

estate is expansive, certain assets may be "exempted" from the reach of creditors.  Exemptions

are crucial to facilitating the debtor's "fresh start," *In re Magee*, 444 B.R. 254, 258 (Bankr.

S.D.N.Y. 2011), and thus "[e]xemption statutes are to be construed liberally in favor of the

debtor." *In re Moulterie*, 398 B.R. 501, 504 (Bankr. E.D.N.Y. 2008).

Section 522(d) of the Bankruptcy Code provides a list of property that may be exempted

under federal law. 11 U.S.C. § 522(d). Section 522(b)(2) allows a state to opt out of § 522(d) by

providing an alternate state law exemption schedule that may be utilized by debtors.  11 U.S.C. §

522(b)(2).  In relevant part, § 282 of the New York Debtor & Creditor Law provides that "an

individual debtor domiciled in this state may exempt property from the estate . . . [including] personal and real property exempt from application to the satisfaction of money judgments under sections fifty-two hundred five and fifty-two hundred six of the civil practice law and rules." N.Y. Debt. & Cred. Law § 282(i).

In this case, the Debtor opted for the New York state exemptions, and in particular, the homestead exemption under New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 5206. This provision allows the Debtor to exempt up to $125,000 of equity in the Debtor's homestead as the property is located in Poughkeepsie NY, which is part of Dutchess County.[1] *See* N.Y. C.P.L.R. § 5206(a). This provision also includes a subsection that limits the debtor's use of the homestead exemption. Under CPLR § 5206(c), "[t]he homestead ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises." *See* N.Y. C.P.L.R. § 5206(c).

By its plain language, N.Y. C.P.L.R. § 5206(c) precludes a debtor from utilizing the homestead exemption if the debtor ceases to occupy the residence for more than one year. *Id.* If occupation has been suspended for less than one year, the homestead exemption is preserved if the suspension "occurs in consequence of injury to, or destruction of, the dwelling house upon the premises." *Id.* The purpose of the homestead exemption is to protect a debtor-homeowner from losing the family home due to economic hardship. *See In re Bace*, 364 B.R. 166, 181 (Bankr. S.D.N.Y. 2007), *rev'd sub nom. on other grounds*, *Bace v. Babitt (In re Bace)*, 2008 WL 800672 (S.D.N.Y. Mar. 25, 2008). "When occupancy of the exempt property ceases the purpose

---

[1] Debtor's claimed exemption exceeds the amount she is permitted to claim under N.Y. C.P.L.R. § 5206(a). For purposes of this decision, the amount claimed does not matter.

of the homestead ceases too." *In re Presti*, 1996 WL 788505, at *2 (Bankr. E.D.N.Y. Dec. 26,

1996) (citing *Fontana v. Fontana,* 89 A.D.2d 843 (N.Y. 2d Dept. 1982)).

*B. Intent to Reside*

In order to claim a homestead exemption under New York law, a debtor must show

"actual physical occupancy on a regular basis" and an intent to reside permanently. *In re*

*Bellafiore*, 492 B.R. 109, 113 (Bankr. E.D.N.Y. 2013) (citing *Town of Skaneateles v. Scott (In re*

*Scott)*, 233 B.R. 32, 40 (Bankr. N.D.N.Y. 1998)); *In re Stanley*, 461 B.R. 161, 165 (Bankr.

E.D.N.Y. 2011). The occupancy requirement has been interpreted to mean "occupied by the

debtor on a more regular basis than any other residence." *Id.* (citations omitted). The intent to

reside has been defined as "a bona fide intent to reside there as one's principal residence—not in

the future, but on the petition date." *Bace*, 364 B.R. at 182.

One exception to the occupancy requirement is the "martial exception." As stated by the

court in *Moulterie*, "where a married couple has separated, pending final resolution of their rights

in the marital residence by state court, the spouse who has vacated the marital residence is

entitled to claim a homestead exemption in the residence, so long as it is occupied by the

spouse." *In re Moulterie*, 390 B.R. 501, 507 (Bankr. E.D.N.Y. 2008). A final resolution of the

Debtor's right to the martial property, which is the Property at issue here, was obtained over one

year prior to the filing of this case in a decision and order of the Supreme Court. *See* Dec. &

Ord. 7, ECF No. 17, Ex. B. As such, the marital exception does not apply in this case.

If there is not actual occupancy, a debtor may demonstrate constructive occupancy of the

property at issue. *Bace*, 364 B.R. at 182. There is no dispute that the Debtor "has not physically

resided in the Property for a period in excess of one (1) year." J. Pre-Trial Or. 3, ECF No. 38.

The question of eligibility to claim a homestead exemption thus hinges on the Debtor's state of

mind as of the filing date and whether the Debtor's "constructively occupied" the Property at that time. *See In re Scott*, 233 B.R. 32, 41 (Bankr. N.D.N.Y. 1998). Lack of ordinary necessities, such as running water, public utilities, a septic system, and other facts indicating inhabitability provide evidence that a debtor does not intend to reside at a property. *Id.* ("While there is no requirement that a plot of land be instantly habitable in order to qualify as a homestead, the Court finds significance in the fact that Debtor apparently took no action to repair or mitigate any of these defects . . . . Taken together, the Court finds that these facts create an inference that Debtor did not have a bona fide intention of making [the property] his permanent regular residence as of [the petition date].").

The evidence presented at trial confirmed that Debtor did not have intent to reside at the Property as of the petition date. Debtor does not sleep at the Property. *See* Oct. 22, 2013 Hr'g Tr. 49:8-12 (Debtor testifying that she moved to her parents' home in 2006 "[j]ust for sleeping"); *id.* at 61:19 ("I'm in the house everyday but I don't sleep there."). Debtor's furniture, clothes, and appliances remain at the Property and she receives mail at the Property. *Id.* at 97:10- 98:5. According to her testimony, Debtor wakes up each morning and borrows her father's car to go to the Property to pack her clothes and do chores, such as ironing, dusting, and paying bills. *Id.* at 87:2-18; 90:7-10; 98:24-99:14.

At the time of filing, there was no running water, no cable television, and no source of heat other than a fireplace. *See id.* at 49:21-53:6; *see also id.* at 61:23). Without water, Debtor testified that she is unable to cook and use the bathroom at the Property. *Id.* at 86:3-7. Despite Debtor's testimony that there was water in the Property in 2011, the decision and order of the Supreme Court of New York, County of Dutchess dated October 6, 2011 indicates that the Property has been in this condition since 2006. *Compare id.* at 24: 19-21 *to* Dec. & Or. 2, ECF

No. 17, Ex B ("[T]he former marital home in Poughkeepsie, which has no mortgage and had not been inhabited since in or about late 2006, when the Wife left because of mold and other conditions there . . . ."). The Debtor has also failed to pay the taxes on the Property for several years. Oct. 22, 2013 Hr'g Tr. 83:4-17.

Despite Debtor's pre-trial arguments that the home is uninhabitable, testimony showed that she could reside at the home "as is" or with minimal expenditures. *See id.* at 54:20-55:4 (Debtor testifying that if the water were turned on she could live at the Property). The Debtor offered absolutely no proof at trial that she made any repairs to the Property since it was awarded to her in the divorce proceeding. *Id.* at 59:12-60:3. Although Debtor testified that she had done minor repairs to the Property from 2006 through 2012, she had no receipts for any repairs, could not remember who had done the repairs, and did not remember how much the repairs cost. *Id.* Her testimony is not credible and is contradicted by the testimony of Bryan Orser and Mustafa Jamal. Mr. Orser and Mr. Mustafa are family friends of the Debtor and both work in construction. *Id.* at 109:5; 163:17. Neither was asked to make repairs to the home nor was either invited to inspect the home until after this litigation commenced. *See id.* at 108:16 (Mr. Orser testifying that he was first in the home in July 2013 to investigate the possibility of repairs); 164:9-16 (Mr. Jamal testifying that he was first in the home to provide an estimate in July 2013).

Mr. Orser, a construction manager, testified that the home is habitable so long as the basement is closed off with plastic and ventilated. *Id.* at 109:5. Mr. Orser inspected the Debtor's home in July of 2013 to provide her with an estimate for the repairs required. *Id.* at 108:16. He has known the Debtor for approximately 20 years and was willing to "donate his time" for all the "demo work" needed for the project. *Id.* at 109:17-110:4. Mr. Orser indicated that he would have performed the demo work free of charge earlier had the Debtor asked him earlier. *Id.* at

116:22-117:1.  He also indicated that the three broken pipes in the basement did not present a

major repair project.  *Id.* at 118:18-23.  He estimated that it would take 25-30 hours to complete

the demo work. *Id.* at 109:17-19.  The Court has no reason to doubt the credibility of Mr. Orser's

testimony.

Mr. Jamal, who is an employee of Ultimate Contracting and is a family friend[2] of the

Debtor, testified that the upstairs of the home was habitable immediately.  *Id.* at 163:2-7.  He is

not licensed as a contractor in Dutchess County, where the Property is located.  *Id.* at 163:25-

164:6. Mr. Jamal estimated that the repairs needs for Debtor's property would cost $48,000.  *See*

D's Ex. D (estimate of repairs by Ultimate Contracting).  This estimate of the cost of repairs to

the home was not credible.  During his testimony, Mr. Jamal indicated that the job would require

"like 20 pieces" of drywall.  Oct. 22, 2013 Hr'g Tr. 164:19-20.  He said each piece of drywall

would cost $8.00.  *Id.* Yet, his estimate gave only a lump-sum figure and did not contain any unit

prices or line totals for the materials and repairs that were included.  *See* D's Ex. D.  The total

quantity of every material was listed as "1," including drywall, insulation, doors, cabinets, and

hardwood floors. *Id.*  Mr. Jamal also testified that he did not check whether the water worked in

the home.  Oct. 22, 2013 Hr'g Tr. 165:20-21.  When asked why, he replied that he was not doing

any plumbing, despite the fact that his estimate shows "Bathroom -  Replace Shower" as work to

be performed.  *See* D's Ex. D.  The estimate includes "Heating and Plumbing" as services to be

subcontracted.  *Id.*  Mr. Jamal also testified that he did not notice any broken pipes in the

basement.  Oct. 22, 2013 Hr'g Tr. 167:12-13.  The witness's testimony and his estimate conflict

and are not credible.  As such, the Court cannot find that the $48,000 estimate is credible.

In light of this testimony, the Court does not find the Debtor's claim that she intended to

reside in the Property on the petition date to be credible. The evidence at trial showed that Debtor

---

[2] Mr. Jamal's "nephew is married to [the Debtor's] daughter."  *See* Oct. 22, 2013 Hr'g Tr. 163:17.

only obtained estimates for repairs in July of 2013, while this litigation was pending.  Based on

the timing of the estimates, the lack of information contained in the estimates, and the lack of

any other receipts or repair bills of any kind, the Court believes that these estimates were

gathered in preparation for this trial and, as such, do not provide any insight into Debtor's intent

to reside at the Property on the petition date.   Similarly, the Debtor's daughter testified that she

started moving her clothes back into the house in July of 2013.  *See* Oct. 22, 2013 Hr'g Tr.

153:21-23.

 Debtor's assertion that she intended to reside in the Property but for the need to make

repairs also conflicts with the Decision and Order of the Supreme Court of New York, Dutchess

County dated October 6, 2011.  In that decision, the court found that the Debtor committed waste

with regard to the Property and that "the deterioration of [the Property] was due in large part to

the [Debtor]'s failure to maintain the premises after the Husband moved out in 2002, as well as

her failure to permit the Husband to make repairs on the premises when he offered to do so."  *See*

Dec. & Ord. 2- 3, ECF No. 17, Ex. B.  That decision goes on to state that the Debtor "receives

support from her extended family, with whom she now resides . . . ."  *Id.* at 5.

 The evidence presented at the October 22, 2013 trial is consistent with the decision and

order of the Supreme Court.  Debtor may stop by the Property from time to time to change

clothes and do chores.  Regardless, Debtor does not sleep at the Property and cannot be said to

reside at the Property, a fact that was admitted in the Joint Pre-Trial order.

 Debtor's son and daughter bolstered Debtor's testimony by testifying at trial that they

kept clothes at the home and spent some time there on occasion to clean the Property or do work.

*See* Oct. 22, 2013 Hr'g Tr. 123-160.  Despite this, both have established other residences.

Debtor's son rents an apartment in New York City and her daughter owns a home in Elmsford,

New York.  *See* Oct. 22, 2013 Hr'g Tr. 129: 23-130:21; 157:3-6.  Debtor's daughter testified that

that she and her mother go to the Property approximately once a week.  *See id.* at 155:21-156:9.

Similarly, Debtor's son testified that he returns to the Property periodically to pick up his mail

and to work on his startup business. *Id.* at 136:16-138:6.  Such activities are not enough to

demonstrate Debtor's intent to reside permanently.  If occupancy for several hours per day or

even for a few days per week were all that was necessary to claim a homestead exemption,

vacation homes would be protected by the exemption.  Case law is clear that vacation homes are

not protected by the homestead exemption. *In re Miller*, 103 B.R. 65, 68 (Bankr. N.D.N.Y.

1989).  "A contrary result flies in the face of the plain language and purpose of NYCPLR §

5206(a) and (c)—at the expense of a debtor's creditors—since the inability to shield a vacation

home from the satisfaction of debt would not render a debtor and his family homeless." *Id.*  Here,

too, the Debtor and her family would not be rendered homeless without the use of the homestead

exemption as they all have other places where they live and sleep.

Debtor has also failed to present evidence of constructive occupancy.  There is no

evidence that she made repairs to the Property.  The estimates presented to this Court were

obtained during the pendency of this litigation and cannot be used to show Debtor's intent as of

the petition date.  The Court finds that these facts, taken together, create an inference that Debtor

did not have a bona fide intent to make the Property her permanent, regular residence as of the

petition date.

## VI. Conclusion

For the foregoing reasons, Perskin's objection to the Debtor's homestead exemption is granted.  Likewise, Debtor's motion to avoid Perskin's judicial lien is denied.  Perskin shall submit an order consistent with this decision.


Dated: Poughkeepsie, New York
      November 15, 2013        /s/ Cecelia G. Morris
                                CECELIA G. MORRIS
                                CHIEF UNITED STATES BANKRUPTCY JUDGE